**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VINCENT MICHAEL MARINO,

                Plaintiff

    - v -                                     Civil No. 9:12-CV-801
                                                           (NAM/RFT)

HARRELL WATTS, *General Counsel/BOP/DOJ*,
DEBORAH G. SCHULT, *Warden/BOP/DOJ*,
ROBERT HELMS, *SIS Lieutenant/BOP/DOJ*,
JASON POIRIER, *Correctional Officer/BOP/DOJ*,
D. RYAN, *Disciplinary Hearing Officer/BOP/DOJ*,
MS. SEPANEK, *Counselor/BOP/DOJ*,
MR. LUCAS, *Case Manager/BOP/DOJ*,
JOSEPH SMITH, *Correctional Officer/BOP/DOJ*,
JOHN and JANE DOES 1-20;

                Defendants.

**APPEARANCES:**                                       **OF COUNSEL:**

**VINCENT MICHAEL MARINO**
Plaintiff, *Pro Se*
14431-038
FCI MCDOWELL
PO BOX 1009
Welch, WV 24801

**THE HON. RICHARD S. HARTUNIAN**         **KAREN F. LESPERANCE**
United States Attorney of the                 Assistant United States Attorney
Northern District of New York
Attorney for Defendants
James T. Foley U.S. Courthouse
445 Broadway
Albany, NY 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Vincent Marino brings this civil rights action,[1] pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971),[2] alleging multiple violations of his constitutional rights. *See generally* Dkt. No. 1, Compl.[3] Defendants move to dismiss the action, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to state a claim, and/or has or could have raised these same claims in a previous federal *habeas corpus* petition, precluding them from being raised in the instant action under the theory of *res judicata*. Dkt. No. 34. Plaintiff opposes the Motion. Dkt. No. 41. For the reasons that follow, we recommend that Defendants' Motion be **GRANTED** and that this action be **DISMISSED** in its entirety.

---

[1] This action was originally commenced on March 16, 2012, in the United States District Court for the District of Columbia. Dkt. No. 1, Compl. at p. 1. On or about April 19, 2012, the case was transferred to the United States District Court for the Southern District of West Virginia. Dkt. No. 3, Order, dated Apr. 19, 2012. Then, on May 15, 2012 the case was transferred to this Court. Dkt. No. 10, Order, dated May 15, 2012.

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), established that an individual may bring a suit for damages against a federal officer, in his individual capacity, for violation of a constitutional right. Generally, case law for lawsuits brought pursuant to 42 U.S.C. § 1983 ("Section 1983") applies to *Bivens* actions. *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir. 1981)) ("Though [Section 1983 and *Bivens*] actions are not precisely parallel, there is a 'general trend in the appellate courts to incorporate § 1983 law into Bivens suits."). Accordingly, the Section 1983 case law cited by the Court in this Report & Recommendation is equally applicable to this *Bivens* action.

[3] Although Plaintiff's Complaint contains numbered paragraphs, not all paragraphs are labeled. Therefore, we will refer to the page numbers of Plaintiff's Complaint.

## I. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n.6 (1963); *see also Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION

### A. Background & Procedural History

On December 22, 1999, Plaintiff was convicted in the Worcester Division of the United

States District Court for the District of Massachusetts on a Racketeer Influence and Corrupt Organizations Act ("RICO") violation, a RICO conspiracy, and a conspiracy to commit murder, for which he was sentenced to a total of thirty-five years imprisonment. *See Marino v. Schult*, 2012 WL 2133630, at *1 (W.D. La. Apr. 16, 2012). Plaintiff was subsequently incarcerated at Federal Correctional Institute ("FCI") Ray Brook, where the claims giving rise to this action took place. *See generally* Compl.

On December 3, 2009, prison authorities at Ray Brook conducted an inspection of Plaintiff's cell, where they found $2,729.32 worth of unused stamps, betting slips, and ten gallons of homemade intoxicants. *See* Dkt. No. 1, Pl.'s Exs. at pp. 39 & 40.[4] Plaintiff was subsequently charged with making, possessing, or using intoxicants, possession of gambling paraphernalia, conducting a gambling pool, and possession of anything not authorized. Pl.'s Ex. at p. 41. On December 15, 2009, a disciplinary hearing, presided over by Disciplinary Hearing Officer ("DHO") Defendant Ryan, was held. Compl. at p. 3; Pl.'s Exs. at p. 41. Defendant Ryan excluded "core exculpatory evidence" including information about the ten gallons of intoxicants and video surveillance footage taken during the time of the search, and he also refused to allow Plaintiff to call Defendant Smith as a witness at his hearing. Compl. at pp. 3–4 & 23. Plaintiff was found guilty, and subsequently spent two and one-half months in the Special Housing Unit ("SHU"), lost thirty-six days of earned good time credits, and his Bureau of Prisons ("BOP") security classification was elevated from level eleven to level twenty-four. Compl. at pp. 4, 6, & 7; Pl.'s Exs. at pp. 37–38.

---

[4] Plaintiff's Exhibits, which are attached to the Complaint, are neither numbered nor sequentially labeled. Therefore, when referencing Plaintiffs's Exhibits the Court will use the notation "Pl.'s Ex. at p." or "Pl.'s Exs. at pp." All citations thereto refer to the page numbers automatically assigned by our Electronic Case Management system.

Plaintiff appealed Defendant Ryan's decision, however, his appeal was denied. *See* Pl.'s Exs. at pp. 42–54.

On February 12, 2010, Plaintiff was placed in BOP's "Diesel Therapy Program." According to Plaintiff, prisoners who complain or write grievances are transferred out of Ray Brook, and bounced around to various FCI's, without access to their legal mail or legal materials. The "Diesel Therapy Program" ended when Plaintiff arrived at FCI Pollock in Louisiana on July 13, 2010. *See, e.g.,* Compl. at pp. 20–21, 23, & 28–30; *see also* Pl.'s Ex. at p. 36. On September 26, 2011, Plaintiff filed a petition for a writ of *habeas corpus* in the Northern District of New York, pursuant to 28 U.S.C. § 2241. Defs.' Mot. at Ex. B, Pl.'s Federal *Habeas* Pet. (hereinafter "Pl.'s Hab. Pet."). On October 20, 2011, the Honorable Andrew T. Baxter, United States Magistrate Judge, transferred Plaintiff's *habeas* petition to the Western District of Louisiana. *Id.* at Ex. C, Order, dated Oct. 20, 2011.

On April 16, 2012, the Honorable James D. Kirk, United States Magistrate Judge, recommended that Plaintiff's *habeas* petition be denied with prejudice. *Marino v. Schult*, 2012 WL 2133630. On June 12, 2012, the Honorable James T. Trimble, United States District Judge, denied Plaintiff's *habeas* petition and dismissed it with prejudice for the reasons set forth in Magistrate Kirk's report and recommendation. *Marino v. Schult*, 2012 WL 2126944 (W.D. La. June 12, 2012).[5]

On March 16, 2012, Plaintiff filed the instant civil rights action. Compl. Plaintiff re-alleged, nearly verbatim, the claims he raised in his federal *habeas* petition, *compare id., with* Pl.'s Hab. Pet., and further expounded upon those claims adding additional facts and allegations, and naming several new Defendants, *see generally* Compl.

---

[5] A copy of this judgment was attached to Defendant's Motion to Dismiss as Exhibit H.

### B. *Res Judicata*

Generally *res judicata*, or claim preclusion, is an affirmative defense to be pleaded in the defendant's answer. *See* FED. R. CIV. P. 8(c). "However, when all relevant facts are shown by the court's own records, of which the court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer." *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *see also Thompson v. Cnty. of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994). Thus, in this case, the grounds for preclusion must be apparent on the face of the Complaint.

When a judgment on the merits is entered in a case, the doctrine of *res judicata* commands preclusive effect not only on matters of law already decided, but also those which could have been raised. *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (cited in *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994)). Under the theory of *res judicata*, a prior judgment has preclusive effect in a subsequent action where:

> (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Allen*, 449 U.S. at 94, 101 S.Ct. 411; *Burgos*, 14 F.3d at 789; *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345–46 (2d Cir. 1995).

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

In actions brought pursuant to § 1983 *res judicata* is largely an issue that arises in the context of "an earlier determination under a state remedy," judgments rendered in *habeas* cases "can effect issue preclusion in a § 1983 action if the issue was litigated and the decision was on the merits." *Williams v. Ward*, 556 F.2d 1143, 1153-54 (2d Cir. 1977) (citations omitted). Thus, it follows that a prior federal *habeas* decision may have a preclusive effect on a subsequent § 1983 or *Bivens* action. *Accord Hawkins v. Risley*, 984 F.2d 321, 323 (9th Cir. 1993) (citing *Williams v. Ward,* 556 F.2d at 1153–54, for the proposition that "a prior federal habeas decision may have preclusive effect

in a § 1983 action"); *see also supra* n.2.

*1. Adjudication on the Merits*

In his report and recommendation, Magistrate Judge Kirk recommended that Plaintiff's federal *habeas* petition be denied with prejudice. *Marino v. Schult*, 2012 WL 2133630. Judge Kirk paraphrased Plaintiff's claims as follows:

1. DHO Officer Ryan violated Marino's due process rights by precluding Marino from receiving core exculpatory material evidence at his DHO hearing to prove the critical 10 gallons of "unknown liquid" depicted in the BOP's first incident report (# 1950877) supports the BOP's second incident report (#1951307) issued 2 full days later, which was false, misleading, inaccurate and should be expunged, since Marino was denied an opportunity to confront and refute the evidence.

2. DHO Officer Ryan violated Marino's right to due process and his liberty interest by failing to allow Marino to call witnesses CO/Joe Smith in his defense.

3. DHO Officer Ryan's preclusion to review the critical video tape of Mohawk-B Unit at FCI-Ray Brook in New York, from 8 a.m. through 2 p.m. on December 3, 2009, which data showed the second incident report (# 1951307) dated December 5, 2009 to be inaccurate and false since the 10 gallons of then "unknown liquid" could not have logically turned into intoxicant 2 days later when it did not exist and it was already deemed "unknown liquid" in the first incident report (#1950877) by BOP staff and thus was not available for further testing.

4. BOP/DOJ staff retaliated against Marino when the BOP staff intentionally manipulated Marino's security level points from 11 points (low level security institution) to 24 points (high level security institution), which adversely affects Marino, placing Marino over 500 miles away from his home, and again retaliated against Marino by placing Marino on the "BOP's Diesel Therapy Program" by putting him in transit without his legal mail and legal property from December 3, 2009 to February 12, 2010 through July 13, 2010, so Marino did not receive his legal mail and legal material until August 2010 (eight months).

5. The DHO officer's failure to dismiss the BOP's second incident report (# 1952307) due to untimely service, in violation of Policy Statement 5270.07 Chapter 2, page 3, subsection I, and CFR 541.11 is refuted by the BOP's first incident report (# 1950877), in violation of Marino's right to due process and liberty interest, since Marino lost 36 days of earned good time credit.

6. The BOP's intentional delay of over 6 months to respond to Marino's BP-l1

> (#570917-Al) was excessive and required review or dismissal of the second incident
> report (# 19513077).

*Id.* at *1–2; *see also* Pl.'s Hab. Pet.

Judge Kirk first analyzed Plaintiff's allegations that his security classification had been elevated and that as a result he was surreptitiously moved to a higher security level prison under the rubric of a due process claim. Judge Kirk noted that "inmates [have] no protectable property or liberty interest in custodial classifications," *Marino v. Schult*, 2012 WL 2133630, at *2 (citing *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)), and that Plaintiff did "not have a constitutionally protected interest in being assigned to a particular prison facility[,]" *id.* (citing, *inter alia*, *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996)). Next, Judge Kirk addressed Plaintiff's security classification and transfer allegations, as well as Plaintiff's allegations that he was deprived of his legal mail/property during his stint in the "Diesel Therapy Program," in the context of a First Amendment retaliation claim. *Id.* at *3. Judge Kirk concluded that these allegations were without merit because Plaintiff failed to establish the causation element of a First Amendment retaliation claim. *Id.*

With regard to Plaintiff's claim that the second incident report should have been dismissed because it was not provided in a timely fashion in accordance with prison regulations, Judge Kirk noted that "[a] failure by prison officials to comply with their own regulations does not state a constitutional claim cognizable on habeas review." *Id.* at *3 (citing *Arceneaux v. Young*, 369 Fed. Appx. 620 (5th Cir. 2010). And, Plaintiff received copies of the incident reports detailing the charges against him well in advance of the twenty-four minimum required under the Constitution. *Id.* at *4 (citing 28 C.F.R. § 541.5).

Likewise, Judge Kirk found that Plaintiff's allegations that DHO Ryan violated his due

process rights by excluding "core exculpatory material evidence" and failing to prove that the "unknown liquid" was actually an intoxicant, as well as his claims that DHO Ryan refused to call Correction Officer Smith as a witness, were also meritless. Judge Kirk recommended that they be dismissed, because, Plaintiff's conviction was supported by "some evidence," which is all that is required under the Constitution. *Id.* at *4–5 (citing, *inter alia*, *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)).

Finally, Judge Kirk found that Plaintiff's allegations that the BOP delayed their response to his grievances by up to six months were meritless because Plaintiff had "no constitutional right to an administrative procedure." *Id.* at *5–6 (citing *Arvie v. Stalder*, 53 F.3d 702, 704–05 (5th Cir. 1995)). On June 12, 2012, Judge Trimble denied Plaintiff's *habeas* petition and dismissed it with prejudice for the reasons set forth in Magistrate Judge Kirk's report and recommendation. *Marino v. Schult*, 2012 WL 2126944.

Thus, each and every one of the claims Plaintiff raised in his federal *habeas* petition was finally adjudicated on the merits.

### 2. *Claims Raised*

When seeking to determine "whether the claims were or could have been considered in the prior action [courts consider] whether the same evidence is needed to support both claims, and whether the facts essential to the second action were present in the first." *See Williams v. Fisher*, 2013 WL 636983, at *5 (N.D.N.Y.), *Rep. & Rec. adopted*, 2013 WL 628641 (Feb. 20, 2013) (NAM) (citing *NLRB v. United Techs. Corp.,* 706 F.2d 1254, 1260 (2d Cir. 1983)). In other words, in order for *res judicata* to apply, the second suit must involve the "same 'claim'–or 'nucleus of operative fact[s]'–as the first suit." *Kiryas Joel Alliance v. Vill. of Kiryas Joel*, 495 F. App'x 183,

187 (2d Cir. 2012) (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000)).

Plaintiff's *Bivens* Complaint copies, almost verbatim, entire sections of his federal *habeas* petition. *Compare* Pl.'s Hab. Pet. *with* Compl. Indeed, the only purported new claims raised by Plaintiff in his *Bivens* Complaint are his allegations that he was subjected to inadequate conditions of confinement during the two and a half months he was confined in FCI Raybrook's SHU in contravention of the Eighth Amendment, and that his right of access to the courts and to the free flow of legal mail under the First Amendment were violated during his forced participation in the so-called "Diesel Therapy Program.[6] According to Plaintiff, he was not provided access to his legal materials or legal mail, the toilets and light could not be operated from inside his cell, the shower was never cleaned, and prisoners who chose to litigate were often skipped over for showers and laundry privileges. Compl. at p. 23. Likewise, Plaintiff further claims that he continued to be deprived of access to his legal mail and materials during the eight months he was being transferred amongst FCI's while he was subjected to the "Diesel Therapy Progam." *See, e.g.,* Compl. at pp. 28–30. Like Plaintiff's other claims, these allegations arise out of events which occurred prior to the time he filed his federal *habeas* petition; moreover, each of the Defendants worked at FCI Raybrook. Thus, the facts and defendants relevant to these claims were all well known to Plaintiff at the time he filed his federal *habeas* petition. Given the temporal and proximate relationship between the events underlying Plaintiff's claims, we are satisfied that all of Plaintiff's claims,

---

[6] Although Plaintiff mentioned his loss of access to legal materials/mail in his federal *habeas* petition, he did so only in the context of seeking to establish that he suffered an adverse action for purposes of his retaliation claim. *See generally* Pl.'s Hab. Pet. Whereas, in his *Bivens* action, Plaintiff expressly claims that the interference with his legal mail/material, during the so-called "Diesel Therapy Program," inhibited his right to access the courts. *See, e.g.,* Compl. at pp. 5–6.

including his conditions of confinement and access to courts claims, arose out of the same nucleus of operative fact. Moreover, we can see no reason why Plaintiff would have been precluded from raising his access to courts or conditions of confinement claims in his *federal* habeas petition. Accordingly, Plaintiff either did, or could have, brought all of the claims he raises in the instant action in his federal *habeas* petition.

### 3. Privity of Parties

The requirement that strict privity between parties exists in order for *res judicata* to apply has long been abandoned. Indeed,

> [i]t is well settled in [the Second Circuit] that literal privity is not a requirement for *res judicata* to apply. *See, e.g., Chase Manhattan*, 56 F.3d at 346 ("Whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions."). Instead, a party will be bound by the previous judgment if his "interests were adequately represented by another vested with the authority of representation." *Alpert's Newspaper Delivery, Inc. v. The New York Times Co.*, 876 F.2d 266, 270 (2d Cir.1989).

*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000).

It is axiomatic that Plaintiff was a party to his federal *habeas* action. Moreover, Deborah Schult, FCI Raybrook's Warden, is named as a Defendant in both actions. Furthermore, as explained *supra*, Plaintiff was aware of the existence and participation of the other Defendants at the time he filed his federal *habeas* petition and the claims are essentially the same in both actions. Moreover, as employees of FCI Raybrook, the other Defendants were either close associates or subordinates of Defendant Warden Schult. Thus, there is sufficient commonality of interest between the named parties in the previous action, and the newly named parties in the instant action for the preclusive effect of *res judicata* to apply. *See Williams v. Fisher*, 2013 WL 636983, at *6 (citing *Waldman v. Village of Kiryas Joel,* 39 F. Supp. 2d 370, 381 (S.D.N.Y.), *aff'd* 207 F.3d 105 (2d Cir.

2000) for the proposition that "(t)he principle of privity has been broadened to some extent in the application of *res judicata,* and has been found to bar relitigation of the same cause of action against a new defendant where the newly named defendant has a close or significant relationship with a previously sued defendant, when the claims in the two actions are essentially the same, and the new defendant's existence and participation in the relevant events was known to plaintiff at the time of the first action.").

Accordingly, we recommend that Defendants' Motion be **GRANTED**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 34) be **GRANTED** and that this action be **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 12, 2014
      Albany, New York

Randolph F. Treece
U.S. Magistrate Judge