UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**VINCENT MICHAEL MARINO,**

**Plaintiff,**

- v -  9:12-CV-801 (NAM/RFT)

**HARRELL WATTS, General Counsel/BOP/DOJ,
DEBORAH G. SCHULT, Warden/BOP/DOJ,
ROBERT HELMS, SIS Lieutenant/BOP/DOJ,
JASON POIRIER, Correctional Officer/BOP/DOJ,
D. RYAN, Disciplinary Hearing Officer/BOP/DOJ,
MS. SEPANEK, Counselor/BOP/DOJ, MR.
LUCAS, Case Manager/BOP/DOJ, JOSEPH
SMITH, Correctional Officer/BOP/DOJ, JOHN
and JANE DOES 1-20;**

**Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

VINCENT MICHAEL MARINO
14431-038
FCI MCDOWELL
PO BOX 1009
Welch, West Virginia 24801
Plaintiff, Pro Se

THE HON. RICHARD S. HARTUNIAN
United States Attorney of the Northern District of New York
KAREN F. LESPERANCE, Esq., Attorney for Defendants
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

# MEMORANDUM-DECISION AND ORDER

## INTRODUCTION

Plaintiff, an inmate in the federal correctional system, brings this *pro se* civil rights action

pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Defendants move (Dkt. No. 41) to dismiss the action, on the ground of failure to state a claim and/or *res judicata*. Upon referral pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c), United States Magistrate Judge Randolph F. Treece has prepared a Report-Recommendation and Order (Dkt. No. 47) recommending dismissal. Plaintiff has filed objections (Dkt. No. 41). Given the extensive nature of plaintiff's objections, the Court conducts a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(C). As set forth below, the Report-Recommendation and Order is accepted insofar as it summarizes the facts and procedural background of this case, and otherwise rejected. The Court grants dismissal of the complaint with leave to replead certain claims.

## BACKGROUND

Magistrate Judge Treece sets forth in detail the procedural history of this action. The Court briefly summarizes it here. On December 22, 1999, plaintiff was convicted in the Worcester Division of the United States District Court for the District of Massachusetts on a Racketeer Influence and Corrupt Organizations Act violation and related crimes. Plaintiff's claims in this action arise from an incident occurring on December 3, 2009, while plaintiff was incarcerated at Ray Brook Federal Correctional Institution ("Ray Brook"). During a search of plaintiff's cell, prison authorities found betting slips, $2,729.32 worth of unused stamps, and ten gallons of homemade intoxicants. Plaintiff was charged with making, possessing, or using intoxicants, possessing gambling paraphernalia, conducting a gambling pool, and possessing unauthorized items. On December 15, 2009, after a disciplinary hearing presided over by defendant Disciplinary Hearing Officer ("DHO") D. Ryan, plaintiff was found guilty. As a result,

plaintiff spent two and one-half months in the Special Housing Unit ("SHU") and lost 36 days of earned good time credits. Plaintiff's administrative appeal was denied.

Plaintiff filed a *habeas corpus* petition in this district pursuant to 28 U.S.C. § 2241, seeking the restoration of the 36 days good time credits or, in the alternative, judicial review of the December 3, 2009 video tape and an evidentiary hearing. On October 20, 2011, the petition was transferred to Western District of Louisiana. On April 16, 2012, United States Magistrate Judge James D. Kirk issued a Report and Recommendation recommending that the *habeas* petition be denied with prejudice. *Marino v. Schult*, 2012 WL 2133630 (W.D. La. Apr. 16, 2012). Magistrate Judge Kirk summarized plaintiff's section 2241 claims as follows:

> 1. DHO Officer Ryan violated Marino's due process rights by precluding Marino from receiving core exculpatory material evidence at his DHO hearing to prove the critical 10 gallons of "unknown liquid" depicted in the BOP's first incident report (#1950877) supports the BOP's second incident report (#1951307) issued 2 full days later, which was false, misleading, inaccurate and should be expunged, since Marino was denied an opportunity to confront and refute the evidence.
>
> 2. DHO Officer Ryan violated Marino's right to due process and his liberty interest by failing to allow Marino to call witnesses CO/Joe Smith in his defense.
>
> 3. DHO Officer Ryan's preclusion to review the critical video tape of Mohawk-B Unit at FCl-Ray Brook in New York, from 8 a.m. through 2 p.m. on December 3, 2009, which data showed the second incident report (# 1951307) dated December 5, 2009 to be inaccurate and false since the 10 gallons of then "unknown liquid" could not have logically turned into intoxicant 2 days later when it did not exist and it was already deemed "unknown liquid" in the first incident report (#1950877) by BOP staff and thus was not available for further testing.
>
> 4. BOP/DOJ staff retaliated against Marino when the BOP staff intentionally manipulated Marino's security level points from 11 points (low level security institution) to 24 points (high level security institution), which adversely affects Marino, placing Marino over 500

> miles away from his home, and again retaliated against Marino by placing Marino on the "BOP's Diesel Therapy Program" by putting him in transit without his legal mail and legal property from December 3, 2009 to February 12, 2010 through July 13, 2010, so Marino did not receive his legal mail and legal material until August 2010 (eight months).
>
> 5. The DHO officer's failure to dismiss the BOP's second incident report (# 1952307) due to untimely service, in violation of Policy Statement 5270.07 Chapter 2, page 3, subsection I, and CFR 541.11 is refuted by the BOP's first incident report (# 1950877), in violation of Marino's right to due process and liberty interest, since Marino lost 36 days of earned good time credit.
>
> 6. The BOP's intentional delay of over 6 months to respond to Marino's BP-11 (#570917-Al) was excessive and required review or dismissal of the second incident report (# 19513077).

*Id*. at \*1-\*2. On June 12, 2012, United States District Judge James T. Trimble denied the petition and dismissed it with prejudice for the reasons set forth in Magistrate Judge Kirk's Report and Recommendation. *Marino v. Schult*, 2012 WL 2126944 (W.D. La. June 12, 2012).

On March 23, 2012 plaintiff filed the instant civil rights action.[1] As Magistrate Judge Treece observes: "Plaintiff re-alleged, nearly verbatim, the claims he raised in his federal habeas petition ... and further expounded upon those claims adding additional facts and allegations, and naming several new Defendants." The causes of action in the complaint before this Court are as follows[2]:

> First Cause of Action
> The willful, intentional actions of Defendants: Watts, Schult , Helms, Poirier, Ryan , Sepanek, Lucas, Smith, & several John & Jane Does 1-20, all conspired together with each other & others known & unknown BOP/DOJ employees to file a false SECOND INCIDENT REPORT #1951307, used to

---

[1] Plaintiff filed the action in District of Columbia District Court, which transferred it to the Souuthern District of Virginia, which transferred it to this Court on May 15, 2012.

[2] The Court quotes from the complaint directly without correcting or noting errors.

take 36 days of earned good time jail credits from Marino, as retaliation for Marino exercising his First Amendment's Freedom of Speech & Fifth & Sixth Amendment's Due Process as described supra. Also violating the 8th Amendment's Cruel & Unusual Punishment without due process of law.

Second Cause of Action
The willful & intentional actions of Defendants: Watts, Schult, Helms, Poirier, Ryan, Sepanek, Lucas, Smith & several John & Jane Does 1-20, all conspired together with each other & others known & unknown to retaliate against Marino for leaving Marino in FCI Ray Brook's SHU without access to flush the toilet, without access to control the lights, without a shower, without clean linen & clothes without his legal work & legal mail, over 2 months over his sanctioned DHO time in violations of the First Amendment's Freedom of Speech, Fifth & Sixth Amendment's Due Process failing to allow Marino the use of the Administrative Remedy Process, and in violations of the Eighth Amendment's Cruel & Unusual Punishment of the United States Constitution leaving Marino in SHU for over 2 months for a false INCIDENT REPORT TWO #1951307.

Third Cause of Action
The willful & intentional actions of Defendants: Watts, Schult, Helms, Ryan, Sepanek, Lucas, Smith, Poirier, & several John & Jane Does 1-20, retaliated against Marino by taking Marino's Federal Rules of Civil Procedure Book on December 3, 2009, over 600 books Commissary bought United States Postage Stamps bought 3 books per week for the past 13-14 years at various prison commissaries as the commissary records so supports, taking Marino's 300 commissary bought fish, seizing Marino's legal mail & legal work preventing Marino from access to the courts, in violations of the 1st Amendments Freedom of Speech, 5th & 6th Amendment's Due Process & 8th Amendment's Cruel & Unusual Punishment of the U.S. Constitution.

Fourth Cause of Action
The willful & intentional actions of Defendants: Watts, Schult, Helms, Ryan, Sepanek, Lucas, Smith, Poirier, & several John & Jane Does 1-20, retaliated against Marino by "Manipulation of Marino's Custody & Security Points" from 11 points to 24 points...

Against Marino for exercising his First Amendment's Freedom of Speech & Fifth & Sixth Amendment's Due Process as seen supra, violating Marino's 1st, 5th, & 6th Amendments, designed to place Marino in USP Pollock, Louisiana that has a history of 15 murders, over 300 stabbings, over 300 knife shots & known as a "Lock Down" institution preventing Marino from access to the Courts, Law Library & the exercise of his Due Process, also in violations of the 8th Amendment's Cruel & Unusual Punishment.

> Fifth Cause of Action
> The willful & intentional actions of Defendants: Watts, Schult, Helms, Poirier, Ryan, Smith, Sepanek, Lucas, & several John & Jane Does 1-20, placing Marino on "Defendants/BOP'S Diesel Therapy Program" from December 3, 2009 through July 13, 2010, Marino was without his legal mail & legal work. In fact Marino did not receive his legal work until August 2010. Marino received some of his "Legal Mail" from 3-6 months later, some was lost, some was destroyed, some was sent back to sender.
>
> Sixth Cause of Action
> The willful & intentional actions of Defendants: Watts, Schult, Helms, Poirier, Ryan, Smith, Sepanek, Lucas, & several John & Jane Does 1-20, intentional infliction of emotional distress and anguish, as the defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of Defendants unconstitutional conduct as described supra; That the conduct was extreme and outrageous was beyond all possible bounds of decency and utterly intolerable in a civilized community; That the actions of Defendants were the cause of Plaintiff Marino's distress; and That the emotional distress sustained by Marino was severe and of a nature that no reasonable man could be expected to endure it, in violations of the 8th Amendment of the United States Constitution & Due Process.

(References to exhibits omitted.)

## DISCUSSION

In addressing this motion to dismiss, the Court views the facts alleged in the complaint in the light most favorable to plaintiff and construes the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013). The Court interprets this *pro se* plaintiff's factual allegations to raise the strongest arguments that they suggest. *See id*. "The court should freely give leave [to amend] when justice so requires." Fed.R.Civ.P. 15(a)(2). Moreover, a court should not dismiss a complaint without leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *See*

-6-

*Grullon*, 720 F.3d at 139. Leave to amend, however, is not required where "the problem with [plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Plaintiff's claim in this Court for money damages and other relief for constitutional violations committed by federal agents acting under color of federal law is properly brought under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). A *Bivens* action shares the same "practicalities of litigation" with claims under 42 U.S.C. § 1983 for constitutional violations committed by state agents acting under color of state law; thus, federal courts "have typically incorporated § 1983 law into *Bivens* actions." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). For purposes of this Memorandum-Decision and Order, the Court relies on both *Bivens* and section 1983 case law.

Defendants seek dismissal on the ground that plaintiff's claims are barred by application of the doctrine of *res judicata* (claim preclusion). This argument lacks merit. Under the doctrine of *res judicata*, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *See EDP Med. Computer Sys. v. United States*, 480 F.3d at 621, 624 (2d Cir. 2007). Defendants cite no authority supporting the contention that the dismissal of plaintiff's *habeas corpus* petition bars his *Bivens* claims on *res judicata* grounds, nor is the Court aware of any.[3] A *Bivens* claim that necessarily

---

[3] The Court has found one unpublished Ninth Circuit decision issued in 1998, *Brown v. Paige*, 162 F.3d 1167 (Table), 1998 WL 756970 (9th Cir. 1998), which dismissed a *Bivens* action on alternative grounds, one of which was the application of *res judicata* to the dismissal of the plaintiff's petition under 28 U.S.C. § 2241. In support of dismissal on this ground, the Ninth Circuit cited *Hawkins v. Risely*, 984 F.2d 321, 325 (9th Cir. 1993), which concerned collateral estoppel, not *res judicata*, and *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991), which stated only that section 1983 actions and *Bivens* actions "are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." The *Brown* case has never been cited, and the Court does not view it as authoritative.

-7-

implicates the validity or duration of an inmate's confinement "is not cognizable" until the inmate successfully challenges the validity or duration of that confinement by way of a *habeas* proceeding. *Tavarez*, 54 F.3d at 110 (citing *Heck v. Humphrey*, 512 U.S. 477, 484-85 (1994)); *accord Edwards v. Balisok*, 520 U.S. 641, 645-48 (1997) (extending *Heck* rule to inmates' challenges to prison disciplinary proceedings that resulted in loss of good time credits). Such a *Bivens* claim does not accrue until the successful conclusion of the *habeas* proceeding, *see Heck*, 512 U.S. at 489-90; thus, it could not properly have been raised within the *habeas* proceeding. To the extent that plaintiff in the case at bar seeks relief that implicates the validity of his disciplinary penalty, and thus the duration of his confinement, his claims are not barred by *res judicata*. Nor is there any basis to apply the doctrine to his other claims.

In support of their *res judicata* argument, defendants cite only two cases that could arguably apply to the instant case: *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996), and *Burgos v. Hopkins*, 14 F.3d 787, 792-93 (2d Cir. 1994). *Kulak* and *Burgos*, however, concern collateral estoppel (issue preclusion), not *res judicata* (claim preclusion). Collateral estoppel precludes a party from relitigating an issue that has been actually litigated and decided in a prior action, provided that: (1) there is an identity of issue which has necessarily been decided in the prior action and is decisive of the present action; and (2) there has been a full and fair opportunity to contest the decision now said to be controlling. *See Kulak*, 88 F.3d at 71-72. *Kulak* and *Burgos* applied the doctrine of collateral estoppel to preclude inmates from relitigating in section 1983 actions issues that had been decided in the inmates' unsuccessful *habeas* proceedings. Because collateral estoppel precludes relitigation of only those issues that have already been litigated and decided, it does not bar relitigation of issues that could have been raised previously

but were not. Therefore, even if the doctrine of collateral estoppel were applied in the instant case, it would not warrant dismissal of the entire complaint now before the Court. Moreover, even where there is an identity of issues, collateral estoppel does not bar a plaintiff's claims if he can show he did not have a full and fair opportunity to litigate the issues in the prior proceeding. *Id.* Whether plaintiff had a full and fair opportunity cannot be resolved on this Rule 12(b)(6) motion.[4] Dismissal on the ground of *res judicata* or collateral estoppel is denied.

The Court now considers the merits of plaintiff's section 1983 claims.

### *First Cause of Action*

The first cause of action claims that defendants filed the incident report (#1951307) underlying the disciplinary proceeding in issue in retaliation for plaintiff's exercise of his First Amendment rights. To state a First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). A finding in plaintiff's favor would necessarily imply that there was no proper non-retaliatory basis for the misbehavior report and subsequent disciplinary proceeding and punishment.[5] Such a finding necessarily implicates the duration of plaintiff's confinement and thus is barred by *Heck* and *Balisok*. Because plaintiff's *habeas corpus* petition was denied – and apparently not appealed – he cannot

---

[4] Plaintiff might well succeed in making such a showing; he was unrepresented, and the *habeas* court held no evidentiary hearing. *Compare Kulak* and *Burgos*, both of which concerned the collateral estoppel effect of issues determined after full hearings.

[5] There is no constitutional violation where a misbehavior report is motivated by a sufficient proper reason, even if it was also motivated by an improper reason. *See Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994).

-9-

now collaterally attack the duration of his confinement by way of this *Bivens* action. *See Balisok*, 520 U.S. at 645-48. Therefore, repleading this cause of action would be futile; better pleading will not cure it. The first cause of action, claiming that the filing of incident report #1951307 was retaliatory, is dismissed without leave to replead.

### *Second Cause of Action*

The second cause of action may be read as challenging the conditions of plaintiff's confinement in the special housing unit ("SHU") resulting from the disciplinary proceeding based on incident report #1951307. Judge Trimble's dismissal of the *habeas* petition forecloses plaintiff from challenging the SHU sentence itself on the ground that it was based on an invalid disciplinary sanction. *See Heck* and *Balisok*. Any such claim is dismissed without leave to replead on the ground of futility.

Plaintiff is not necessarily foreclosed, however, from obtaining relief based on the conditions he experienced while in SHU. Although he is precluded by the outcome of his *habeas* proceeding from claiming that his SHU confinement denied him a liberty interest without due process, he may be able to establish an Eighth Amendment claim of cruel and unusual punishment. The Second Circuit explains:

> To demonstrate that the conditions of his confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test. First, the plaintiff must demonstrate that the conditions of his confinement result in unquestioned and serious deprivations of basic human needs. Second, the plaintiff must demonstrate that the defendants imposed those conditions with deliberate indifference.

*Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citations and quotation marks omitted). Petitioner's allegations fail to meet either test sufficiently to allege a plausible claim.

In view of plaintiff's *pro se* status, the Court gives him an opportunity to replead this

-10-

claim. The Court adds that, in addition to addressing the two tests set forth in *Jolly*, plaintiff should include allegations supporting a finding of personal involvement of each defendant against whom he wishes to pursue this claim. With respect to supervisory defendants, the Second Circuit has construed personal involvement "to mean direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). If plaintiff chooses to replead an Eighth Amendment claim based on the conditions of his SHU confinement, the Court recommends that he also plead whether and how he exhausted his administrative remedies regarding SHU conditions.

### *Third Cause of Action*

The third cause of action alleges defendants retaliated against plaintiff by confiscating his property, including his legal mail. A prison official's conduct in confiscating, losing, or destroying an inmate's property may constitute an adverse action for purposes of a retaliation claim. *See, e.g., Mateo v. Bristow*, 2013 WL 3863865, *5 (S.D.N.Y. Jul. 16, 2013). As noted above, to state a First Amendment retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill*, 389 F.3d at 380. Depending on the circumstances, confiscation of legal mail may qualify as an adverse action. Although he lists a number of lawsuits he has brought, letters of complaint he has written to governmental officials and entities, and grievances he has filed, plaintiff does not specify which constitute a protected action in the context of this claim. Nor does he specify which of the many defendants may have known of any particular lawsuit, letter, or grievance;

-11-

which specific defendants participated in the adverse action; or on what basis plaintiff alleges a causal connection between a particular lawsuit, letter, or grievances and the confiscation of his mail or other property. Nor does he set forth a basis for imposing liability on the supervisory defendants. Plaintiff does not plausibly plead a retaliation claim based on confiscation of his mail or other property.

The allegation that prison officials intentionally confiscated plaintiff's legal mail might also support a claim of unconstitutional denial of plaintiff's access to the courts. *See Franco v. Kelly*, 854 F.2d 584, 588 (2d Cir. 1988). To state a claim for denial of access to the courts, including a claim based on interference with legal mail, plaintiff must allege actual injury, *i.e.*, that the defendants' actions hindered his efforts to pursue a particular legal claim. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Accordingly, without identification of the underlying action that was hindered, and the manner in which it was hindered, plaintiff does not properly plead actual injury, and thus does not plead a First Amendment violation. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) ("[T]he underlying cause of action ... is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."). Plaintiff fails to satisfy this requirement.[6] Moreover, plaintiff does not specify how each named defendant was personally involved in this alleged deprivation.

---

[6] Plaintiff asserts that, due to the misconduct of defendants Helms, Poirier, and Schults, his "Petition for Rehearing and/or Suggestion for Rehearing En Banc" in *United States v. Marino*, First Circuit Appeal No. 09-1854, was not filed until December 21, 2009 and was dismissed as untimely on January 8, 2010. A review of the docket in that appeal establishes that the First Circuit's January 8, 2010 order striking the petition states as follows: "The petition for panel rehearing and for rehearing en banc is stricken as unauthorized. *See Lykus v. Corsini*, 565 F.3d 1 (1st Cir. 2009); 28 U.S.C. § 2244(b)(3)(E)." Thus, the petition was stricken not because it was untimely, but because a petition for rehearing or rehearing en banc of an application for leave to file second or successive habeas petition is barred by 28 U.S.C.A. § 2244(b)(3)(E).

Plaintiff does not plausibly plead a claim for denial of access to the courts. The third cause of action is dismissed with leave to replead.

*Fourth Cause of Action*

Plaintiff claims that defendants retaliated against him by manipulating his custody and security points from 11 to 24 points, resulting in his transfer to United States Penitentiary Pollock, Louisiana, a facility which "has a history of 15 murders, over 300 stabbings, over 300 knife shots & known as a 'Lock Down' institution preventing Marino from access to the Courts, Law Library & the exercise of his Due Process, also in violations of the 8th Amendment's Cruel & Unusual Punishment." It is not clear what protected action underlies this claim. As for an adverse action, some courts have indicated that a prison transfer may constitute an adverse action where, as here, a plaintiff claims he was transferred to a facility imposing more onerous conditions. *See, e.g., Tuitt v. Chase*, 2013 WL 877439, \*9 ("The transfer of a prisoner is not considered an 'adverse action' unless it results in the prisoner being subjected to more onerous conditions."). Here, even assuming that plaintiff's transfer constitutes an adverse action, plaintiff pleads no basis for finding the transfer was retaliatory. Attached to the complaint is a form dated April 27, 2006 showing his classification as 11, and a form dated February 2, 2011 showing his classification as 24. These forms, showing an increase in plaintiff's security classification at an unspecified time during a period of almost five years, do not support a finding of a causal connection between whatever protected act plaintiff relies on and the change in his classification. Moreover, plaintiff appears to claim that his security classification was revised shortly after the December 3, 2009 incident, in which case the December 3, 2009 incident and the December 15, 2009 disciplinary determination would provide defendants with a proper non-retaliatory ground for raising

-13-

plaintiff's security points, regardless of whether they also had a retaliatory motive, thus defeating this claim. *See Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (stating that where adverse action "is motivated by both proper and improper reasons, the action may be sustained if it would have been taken even in the absence of the improper reason."). This cause of action is dismissed with leave to replead. If plaintiff chooses to replead, he should spell out what protected action he is relying on, which of the defendants he claims is responsible for the reclassification, and the basis for alleging a causal connection between the protected action and the reclassification.

### *Fifth Cause of Action*

The fifth cause of action alleges defendants intentionally placed plaintiff in their "Diesel Therapy Program" (that is, transferred him frequently) from December 3, 2009 through July 13, 2010. As a result, plaintiff claims, he "was without his legal mail & legal work." He adds: "In fact Marino did not receive his legal work until August 2010. Marino received some of his 'Legal Mail' from 3-6 months later, some was lost, some was destroyed, some was sent back to sender." As discussed above in the context of the third cause of action, to state a claim for denial of access to the courts based on interference with legal mail, plaintiff must allege actual injury, that is, that the defendants' actions hindered his efforts to pursue a particular legal claim. *See Davis*, 320 F.3d at 351. Accordingly, without identification of the underlying action which was hindered, and the manner in which it was hindered, plaintiff does not properly plead actual injury. Thus, he does not plead a First Amendment violation in this respect. *See Christopher*, 536 U.S. at 415. Moreover, plaintiff does not specify how most of the named defendants were involved in this alleged deprivation, nor does he set forth a basis for supervisory liability. Plaintiff does not plausibly plead a claim for denial of access to the courts. The fifth cause of action is dismissed

with leave to replead.

*Sixth Cause of Action*

The sixth cause of action is for intentional infliction of emotional distress, a New York State common-law claim. The Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(e), provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."[7] Plaintiff's claim for intentional infliction of emotional distress is barred as a matter of law by section 1997e(e). *See Thompson v. Carter*, 284 F.3d 411, 417-18 (2d Cir. 2002). The sixth cause of action is dismissed without prejudice.

*Equal Protection*

In his objection to the Report-Recommendation and Order, plaintiff refers to an equal protection "class of one" claim. To succeed on such a claim, a plaintiff must establish that no rational person could regard plaintiff's circumstances to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy. *See Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59-60 (2d Cir. 2010). There is nothing in plaintiff's papers to suggest that he has a viable class of one claim. Any such claim is dismissed without prejudice.

*Due Process*

In the body of the complaint, plaintiff repeatedly refers to the Fifth Amendment right to

---

[7] Section 1997e(e) does not, however, warrant dismissal of the entire complaint. The absence of physical injury does not restrict a plaintiff's ability to recover nominal damages, punitive damages, or injunctive or declaratory relief for constitutional wrongs. *See Thompson v. Carter*, 284 F.3d 411, 417-18 (2002).

-15-

due process. Any due process claim plaintiff may assert based on the disciplinary proceeding regarding the December 3, 2009 incident lacks merit as a matter of law because it is barred by *Heck* and *Balisok*. Any due process property interest claim regarding the items allegedly confiscated from plaintiff's cell on December 3, 2009 lacks merit as a matter of law because plaintiff had statutory post-deprivation remedies available. *See* 31 U.S.C. §§ 3723(a)(1); 3724. If plaintiff intended to plead either of these claims, they are dismissed without leave to replead on the ground of futility.

Plaintiff also refers to his Sixth Amendment due process rights. It appears that he is claiming that the procedures utilized in the disciplinary hearing violated his Sixth Amendment rights to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense. A prison disciplinary proceeding is not, however, a criminal prosecution, and the Sixth Amendment does not apply. *See Sash v. Zenk*, 439 F.3d 61, 63 (2d Cir. 2006) ("Prison disciplinary hearings are not treated as 'criminal' for purposes of the Sixth Amendment."). In any event, any such claim would be barred by *Heck* and *Balisok*. Any Sixth Amendment claims based on the procedures utilized in the disciplinary proceeding are dismissed without leave to replead on the ground that they are futile.

*Fourth Amendment*

Plaintiff also cites to the Fourth Amendment. Plaintiff cannot maintain a Fourth Amendment claim that he was subjected to an unreasonable cell search, because "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Any Fourth Amendment claim based on the fact that his cell was searched on December 3, 2009 is dismissed without leave to replead

-16-

on the ground of futility.

### *Other Allegations*

In various parts of the complaint, plaintiff refers to lawsuits he has brought, letters he has written, and grievances he has filed. In this rambling, single-spaced 34-page complaint, which contains more than 100 numbered paragraphs and an additional 20 pages of exhibits, these references are insufficient to apprise the Court of what additional claims plaintiff may wish to assert. All claims not specifically addressed above are dismissed with leave to replead. If plaintiff decides to file an amended complaint, the Court recommends that he avoid inserting repetitious or irrelevant allegations.

## CONCLUSION

The complaint is dismissed with leave to replead, except that, as explained above, certain claims are dismissed without leave to replead on the ground of futility. If plaintiff decides to serve and file an amended complaint, he is advised that the amended complaint will completely supersede and replace the initial complaint. Therefore, the amended complaint should contain all claims plaintiff wishes to pursue. Any defendant not named in the amended pleading will no longer be a defendant in the action. If plaintiff claims that his rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying the alleged act of misconduct; the date on which such misconduct occurred; the names of each and every individual who participated in such misconduct; where appropriate, the location where the alleged misconduct occurred; and the nexus between such misconduct and the rights allegedly infringed.

Any amended complaint shall be filed and served on or before the date set forth below. Plaintiff is warned that if he fails to file and serve an amended complaint in compliance with this Memorandum-Decision and Order on or before that date, the case will be dismissed.

It is therefore

ORDERED that the Report-Recommendation and Order (Dkt. No. 47) is accepted insofar as it summarizes the facts and procedural background of this case, and otherwise rejected; and it is further

ORDERED that defendants' motion to dismiss (Dkt. No. 34) is granted as set forth herein; and it is further

ORDERED that the complaint is dismissed with leave to replead in accordance with this Memorandum-Decision and Order; and it is further

ORDERED that if plaintiff does not submit a timely amended complaint, the matter will be reviewed by this Court for judgment dismissing the action; and it is further

ORDERED that if plaintiff does submit a timely amended complaint, the case shall be returned to the magistrate judge for further proceedings; and it is further

ORDERED that **ANY AMENDED COMPLAINT SHALL BE FILED AND SERVED ON OR BEFORE JUNE 6, 2014**; and it is further

ORDERED that **PLAINTIFF IS WARNED THAT IF HE FAILS TO FILE AND SERVE AN AMENDED COMPLAINT IN COMPLIANCE WITH THIS MEMORANDUM-DECISION AND ORDER ON OR BEFORE JUNE 6, 2014, THE CASE WILL BE DISMISSED**; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-

Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Date:   May 6, 2014
        Syracuse, New York

Norman A. Mordue
Senior U.S. District Judge