# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

VINCENT MICHAEL MARINO,

Plaintiff,

- v -                                    Civ. No. 9:12-CV-801
                                              (NAM/RFT)

HARRELL WATTS, *General Counsel/BOP/DOJ*;
DEBORAH G. SCHULT, *Warden/BOP/DOJ*; ROBERT
HELMS, *SIS Lieutenant/BOP/DOJ*; JASON POIRIER,
*Correctional Officer/BOP/DOJ*; D. RYAN, *Disciplinary
Hearing Officer/BOP/DOJ*; SEPANEK, *Counselor/BOP/DOJ*;
MR. LUCAS, *Case Manager/BOP/DOJ*; JOSEPH SMITH,
*Correctional Officer/BOP/DOJ;* JOHN and JANES DOES # 1-20,

Defendants.

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

## I. PROCEDURAL HISTORY

Plaintiff Vincent Michael Marino, while incarcerated at a federal facility in

Welch, West Virginia, filed a *pro se* civil rights action,[1] pursuant to *Bivens v. Six

Unknown Named Agents of Fed. Bureau of Narcotics*, 430 U.S. 388 (1971),[2] alleging

---

[1] Plaintiff initially filed the action in the United States District Court District of Columbia, which transferred it to the Southern District of Virginia. Dkt. No. 3, Transfer Order, dated Apr. 19, 2012. The action was then transferred to this Court on May 15, 2012. Dkt. No. 10, Transfer Order, dated May 15, 2012.

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), recognized the existence of a cognizable claim in certain instances for alleged constitutional violations committed by federal agents. In order to state a *Bivens* claim, a plaintiff must allege a constitutional deprivation by defendants acting under color of federal law. *Soichet v. Toracinta*, 1995 WL 489434, at *3 (S.D.N.Y. Aug. 16, 1995). Generally, case law under 42
(continued...)

that several Bureau of Prison ("BOP") employees and officials violated his constitutional rights. *See generally* Dkt. No. 1, Compl.

On March 14, 2013, Defendants filed a Motion to Dismiss all of the claims in the Complaint based on *res judicata* or, alternatively, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 34-1, Defs.' Mem. of Law, at p. 2. Upon referral, pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c), the undersigned issued a Report-Recommendation and Order recommending that the action be dismissed in its entirety with prejudice. Dkt. No. 47, Rep.-Rec. and Order, dated Feb. 12, 2014. On February 24, 2014, Plaintiff raised a number of objections to that recommendation. Dkt. No. 48.

On May 6, 2014, the Honorable Norman A. Mordue, Senior United States District Judge, issued a Memorandum-Decision and Order dismissing certain claims with prejudice and others without prejudice with leave to amend, and he referred the Amended Complaint to this Court for review. Dkt. No. 49. On May 19, 2014, Plaintiff filed a timely Amended Complaint. Dkt. No. 52. Pursuant to Judge

---

[2](...continued)
U.S.C. § 1983 applies to *Bivens* cases. *Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987) (quoting *Ellis v. Blum*, 643 F.2d 68, 84(2d Cir. 1981)).

Mordue's directive and the authority found in 28 U.S.C. 1915A,[3] the Court will review the Amended Complaint.

## II. DISCUSSION

### A. Amended Complaint

As an initial matter, the Court notes that Plaintiff's Amended Complaint is replete with legal conclusions, scant factual allegations, claims that were previously dismissed with prejudice, and includes several claims which Plaintiff was provided with leave to amend. *See generally* Am. Compl. The bulk of Plaintiff's claims stem from his allegation that he was retaliated against for writing an affidavit in support of another inmate's litigation and that his December 15, 2009 disciplinary hearing was procedurally defective.

Accepting the Amended Complaint as true, Plaintiff claims that on or about April 8, 2008, while incarcerated at FCI Ray Brook, a federal facility, he provided Douglas R. McCarroll, another inmate at that Facility, with a sworn affidavit in support of McCarroll's anticipated litigation against Matteau,[4] a Ray Brook BOP

---

[3] Section 1915A of Title 28 of the United States Code requires a court, as soon as practicable, to conduct a *sua sponte* review of "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employees of a governmental agency" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(a) & (b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*).

[4] Matteau is not a defendant in this action.

employee.  *Id.* at p. 4.[5]  McCarroll filed a federal action against Matteau for "misconduct" in January 2009, and apparently filed the affidavit as part of his federal pleading.  *Id.* at p. 6.  On December 2, 2009, Defendants Helms and Poirier found a copy of the affidavit in Plaintiff's cell.  *Id.*  On December 3, 2009, Defendants Poirier and Helms "planted betting slips in [Plaintiff's] cell [and] confiscated" over "600 books of unused stamps[.]"  *Id.*  Defendant Poirier then filed an incident report which states that he found "$2,729.32 dollars worth of unused stamps . . . . [And] a blue folder that contained . . . betting slips for the NFL's week 14 games, and a large amount of unused [] gambling slips," as well as a "a false wall" in which he discovered ten gallons of "homemade intoxicants."  Dkt. No. 52, Am Compl., Ex. 5, Incident Rep. No. 1951307, dated Dec. 3, 2009.

Plaintiff was subsequently charged with making, possessing, or using intoxicants; possession of gambling paraphernalia; possession of anything not authorized; and conducting a gambling pool.  Dkt. No. 52, Am. Compl., Ex. 6, Discipline Hr'g Officer Rep., dated Dec. 15, 2009.  On December 15, 2009, a disciplinary hearing was held, and, at some point before December 17, 2009, Plaintiff admitted to possessing the intoxicants, excess stamps, and gambling slips.  *Id.*  For the various charges, he was sanctioned with sixty days in disciplinary segregation, lost

---

[5] Although the Amended Complaint consists of numbered entries, those entries, at times, stretch over a few pages.  As a result, the Court will instead cite to the Amended Complaint's pagination.

thirty-six days of good time jail credit, and was restricted from using the telephone, visitation, and commissary. *Id.*

### 1. Claims Reasserted with Permission to Replead

With permission to replead, Plaintiff reasserts the following claims:

1) Eighth Amendment conditions of confinement claim based on his experience in the Special Housing Unit ("SHU");

2) First Amendment denial of access to the courts based on his inability to receive his legal mail due to his placement in the Diesel Therapy Program;

3) First Amendment denial of access to the courts based on the withholding of his legal mail and property

4) First Amendment retaliation claim based on his transfer to more onerous facility;

5) Equal Protection "Class of One" claim;

6) Intentional Infliction of Emotional Distress, a New York State common-law claim; and

7) all claims not specifically addressed in the May 6, 2014, Memorandum-Decision and Order. Dkt. No. 49.

The Court will address these claims below.

### a. Eighth Amendment Conditions of Confinement

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege that (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2)

the prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991) (citation omitted) (cited in *Branham v. Meachum*, 77 F.3d 626, 630-31 (2d Cir. 1996)).

In *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002), the Second Circuit set out in detail the requirements that a plaintiff must prove in order to make out a claim that the conditions of his confinement violated the Eighth Amendment:

> Under the Eighth Amendment, States must not deprive prisoners of their "basic human needs — *e.g.*, food, clothing, shelter, medical care, and reasonable safety." *Helling*, 509 U.S. [25,] 32 [(1993)] (citation and internal quotation marks omitted). Nor may prison officials expose prisoners to conditions that "pose an unreasonable risk of serious damage to [their] future health." *Id.* at 35. Ultimately, to establish the objective element of an Eighth Amendment claim, a prisoner must prove that the conditions of his confinement violate contemporary standards of decency. *Id.* at 35-36, 113 S.Ct. 2475; *Rhodes*, 452 U.S. [337,] 347 [(1981)].
>
> Concerning the "subjective" requirement, the Supreme Court has explained that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. [825,] 837 [(1994)].

*Phelps v. Kapnolas*, 308 F.3d at 185-86.

On December 3, 2009, Plaintiff was placed in SHU for "2 ½ months." Am. Compl. at p. 21. While there, he did not have window ventilation, sunshine, or fresh air; he was only permitted to shower "every three days"; his lights were left on all

-6-

night, and sometimes all day depending on the correctional officer's mood; and his toilet was only flushed once a day, if at all. *Id.* at pp. 21-22 & 33.[6] During Plaintiff's confinement in SHU, "the above happened . . . off & on[.]" *Id.* at p. 33.

Here, Plaintiff fails to plead an Eighth Amendment conditions of confinement cause of action as his allegations are not sufficiently serious under the objective prong, and there are no facts indicating that any of the Defendants caused or were even aware of these conditions. As a result, the Court recommends **dismissing** this claim with prejudice.

To the extent Plaintiff attempts to raise a due process claim regarding his confinement in SHU that resulted from an invalid disciplinary hearing, *see* Compl. at p. 24, this claim cannot stand as it was previously dismissed without leave to replead on the ground of futility because it is barred by *Heck v. Humphrey* ("*Heck*"), 512 U.S. 477 (1994) and *Edwards v. Balisok* ("*Balisok*"), 520 U.S. 641 (1997). Mem.-Dec. & Order at pp. 10 & 15.

### b. Retaliation

To state a First Amendment retaliation claim, a plaintiff must allege "1) that the speech or conduct at issue was protected, 2) that the defendant took adverse action

---

[6] Plaintiff does not state how these conditions affected him.

against the plaintiff, and 3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak,* 389 F.3d 379, 384 (2d Cir. 2004).

In situations where the defendant's actions are the result of both retaliatory and legitimate reasons, the burden shifts to the defendants to show that they would have taken the same action absent the retaliatory motive. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977) & *Lowrance v. Achtyl,* 20 F.3d 529, 535 (2d Cir. 1994)).

Plaintiff claims that, "on or about January/February 2010," Defendants Lucas, Helms, and Sepanek increased his security classification from eleven to twenty-four points in retaliation for providing McCarroll with a sworn affidavit, which McCarroll then filed to support his federal action against Matteau. Am. Compl. at pp. 32 & 40. As a result of Defendants' "point manipulation," Plaintiff was transferred to "USP Pollock, LA, a facility which 'has a history of over 15 murders, over 300 stabbings & over 300 knife shots[.]'" *Id.* at pp. 39-40. To support this claim Plaintiff has submitted a copy of his Security Classification Form, dated April 27, 2006, which indicates his security classification as eleven, as well as a copy of a subsequent Security Classification Forms, dated February 2, 2011, which indicates his security classification as twenty-four. Dkt. No. 52, Am. Compl., Exs. 2 & 3, Security Classification Form, dated Apr. 27, 2006 & Feb. 2, 2011.

Here, Plaintiff's affidavit in support of another inmate's litigation may constitute protected speech, and his transfer to a harsher facility may constitute an adverse action. However, Plaintiff fails to allege a plausible causal connection. Notably, the affidavit does not name any of the Defendants, consequently, there is no basis for inferring that these Defendants would retaliate against Plaintiff for writing an affidavit in which they were not personally named. *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (collecting cases for the proposition that a plaintiff fails to demonstrate a causal connection when a defendant is not personally named in a grievance or a complaint). Thus, the Court recommends **dismissing** this claim with prejudice.

### c. Denial of Access to the Courts

Plaintiff also alleges that, from December 3, 2009 through July 13, 2010, Defendants Watts, Schult, Helms, Poirier, Ryan, Sepanek, Lucas, Smith, John and Jane Does No. 1-20 placed him in the Diesel Therapy Program[7] in order "to deter & prevent [him] from participating in the McCarroll Court Trial Lawsuit" and in retaliation for writing an affidavit in support of McCarroll's litigation against Matteau. Am. Compl. at pp. 13, 21, & 41. And, as a consequence of his placement in the

---

[7] It appears that inmates placed in the Diesel Therapy Program are frequently transferred "from one institution to another." Dkt. No. 52, Am. Compl., at p. 43.

Program, his legal mail was lost and he was "separate[d] . . . from his legal work for over 8 months[.]" *Id.* at pp. 26 & 43.

Plaintiff further alleges that he was denied access to the courts when Defendants Helms, Sepanek, and Lucas "confiscat[ed] [his] legal mail[,] legal work[,] . . . [and] Civil Procedure Book"; and that Defendants did so in retaliation for naming Matteau in the affidavit that was filed in a federal court by McCarroll. *Id.* at pp. 34-35.

It is well established that "prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The Second Circuit has stated that in order to state a claim for denial of access to the courts *via* interference with legal mail, the plaintiff must allege that the defendant caused actual injury, *i.e.*, the defendant "took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a [non-frivolous] legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) (further citations omitted); *see also Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

Here, Plaintiff claims that his injury was his decision not to testify for McCarroll. Am. Compl. at p. 41. Plaintiff maintains that this was his injury "even though McCarroll did not ultimately go to trial . . . [and] the government gave McCarroll an out of court settlement[.]" *Id.* at p. 43. This allegation does not satisfy the actual injury requirement because Plaintiff was not hindered from pursuing his

own legal claim.  Thus, the Court recommends **dismissing with prejudice** his denial of access to the courts claim.

With respect to Plaintiff's retaliation claim based on his placement in the Diesel Therapy Program, writing an affidavit in support of another inmate may be protected speech and placement in such program may constitute adverse action, however, Plaintiff fails to sufficiently plead a causal connection.  Although there is a temporal proximity as to when the affidavit was discovered and his subsequent placement in the Program, the Court has no basis to infer that the named Defendants retaliated against Plaintiff for writing an affidavit that did not name them therein.  *Roseboro v. Gillespie*, 791 F. Supp. 2d at 369.  Furthermore, Plaintiff does not state how most of the named Defendants had knowledge of the affidavit or how they were personally involved with his placement in that program.  As a result, the Court recommends **dismissing with prejudice** Plaintiff's retaliation claim stemming from his alleged placement in the Diesel Therapy Program.  Likewise, the Court recommends **dismissing with prejudice** Plaintiff's claim that Defendants Helms, Lucas, and Sepanek confiscated his legal work or legal property in retaliation for writing an affidavit in which they were not named.

### d. Equal Protection

A "class of one" equal protection claim requires the claimant to demonstrate that he shares an "extremely high degree of similarity" with the "persons to whom [he] compare[s] [himself]." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citations omitted). Further, the claimant must show that:

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake.

*Id.* (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005) (citations omitted) partially abrogated on other grounds by *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008)).

Here, Plaintiff claims that he faced a "high[er] degree" of retaliation from the Defendants than "[o]ther litigators at FCI Ray Brook[.]" Am. Compl. at p. 18. The Court recommends **dismissing with prejudice** Plaintiff's equal protection claim as it is wholly based on legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) (legal conclusions are not entitled to the assumption of truth).

### e. Intentional Infliction of Emotional Distress

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or

other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."

The Court recommends **dismissing** this claim with prejudice because Plaintiff fails to allege a physical injury, and as a result, he is barred from asserting a claim for intentional infliction of emotional distress.

2. *Claims Presently Raised That Were Previously Dismissed With Prejudice*

*a. Retaliation*

To the extent Plaintiff is attempting to reassert[8] that Defendants Helms and Poirier intentionally submitted false incident reports against him, this claim is barred by *Heck* and *Balisok* because a ruling in favor of Plaintiff would implicate the duration of Plaintiff's confinement. *See* Mem.-Dec. & Order at p. 9. Likewise, his claim that supervisory liability should be imposed because of Defendants' "failure to properly investigate" whether the incident reports were accurate should also be dismissed as there are no other facts to support this claim and it is equally barred by *Heck* and *Balisok*.

*b. Due Process*

Plaintiff reiterates several allegations in an effort to demonstrate that the disciplinary hearing was procedurally invalid, thus resulting in an invalid SHU

---

[8] It is unclear whether Plaintiff is attempting to reassert this claim or merely attempting to provide a factual background.

sentence: (1) he claims that Ryan, the Disciplinary Hearing Officer, was biased and "should have recused himself"; (2)he had an inadequate staff representative "whom never showed up"; and (3) was denied "exculpatory material evidence[.]" Am. Compl. at p. 11. However, these claims were previously dismissed without leave to replead on the ground of futility because they are barred by *Heck* and *Balisok*. Mem.-Dec. & Order at p. 10.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Amended Complaint (Dkt. No. 52) be **DISMISSED in its entirety** for failure to state a claim upon which relief can be granted and that this action be closed; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: May 28, 2015
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge