**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

VINCENT MICHAEL MARINO,

                                        Plaintiff,

                - v -                                          Civ. No. 9:12-CV-801
                                                                      (NAM/DJS)

HARRELL WATTS, *et al.*,

                                        Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

VINCENT MICHAEL MARINO
Plaintiff, *Pro Se*
14431-038
FCI HAZELTON
P.O. Box 5000
Bruceton Mills, West Virginia 26525

HON. RICHARD S. HARTUNIAN                    KAREN FOLSTER LESPERANCE
United States Attorney                       Assistant United States Attorney
Northern District of New York
Attorney for Defendants
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 12207


**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Vincent Michael Marino commenced this action pursuant to *Bivens v. Six*

*Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Dkt. No. 52,

Am. Compl.  Plaintiff's sole claims that survived initial review, pursuant to 28 U.S.C. § 1915A, are

claims for retaliation against Defendants Helms, Schult, Watts, Sepanek, and Lucas.  Dkt. No. 62,

Mem.-Dec. & Order, dated Sept. 23, 2015, at pp. 4-6.  Presently before the Court is Defendants'

Motion to Dismiss, wherein they argue that the Court should decline to recognize a *Bivens* remedy for a First Amendment retaliation claim. Dkt. No. 69, Defs.' Mot. Dismiss. Plaintiff filed a Response in Opposition and Defendants filed a Reply. Dkt. Nos. 74, Pl.'s Resp.; 75, Defs.' Reply. For the reasons that follow, the Court recommends that Defendants' Motion be **granted in part** and **denied in part**.

## I. BACKGROUND

The Court herein summarizes the allegations contained in Amended Complaint which are relevant to Plaintiff's retaliation claims. For further background on this case, reference is made to the previous Report-Recommendations and Memorandum-Decision and Orders in this action. *See* Dkt. Nos. 47, 49, 56, & 62.

On or about April 8, 2008, Plaintiff, while incarcerated at Ray Brook Federal Correctional Institute, provided a sworn affidavit in support of a fellow inmate's anticipated litigation against Bureau of Prison ("BOP") employee Y. Matteau. Am. Compl. at p. 4.[1] The inmate commenced the action in the Northern District in January 2009 and filed Plaintiff's affidavit. *Id.* at pp. 4 & 6. On December 2, 2009, Defendants Helms and Porier discovered the affidavit in Plaintiff's cell. *Id.* at p. 6. Plaintiff alleges that Helms told him that they had found the affidavit. *Id.* at p. 16.

The next day, December 3, 2009, Helms and Poirier "planted betting slips in [Plaintiff's] cell," confiscated "over 600 books of unused stamps," and found ten gallons of a homemade intoxicant behind a false wall. *Id.* at pp. 6-8. On December 3, 2009, an incident report was filed against Plaintiff for destruction of government property in excess of $100, in connection with the removal of the false wall. *Id.*, Ex. 4, Incident Report No. 1950877, dated Dec. 3, 2009. Poirier then

---

[1] Because some paragraphs of the Amended Complaint are not numbered, the Court cites to the pagination assigned by Plaintiff.

filed a second incident report in which he states that he found "$2,729.32 dollars worth of unused stamps . . . betting slips for the NFL's week 14 games . . . a large amount of unused apparent gambling slips," and "approximately 10 gallons of homemade intoxicants." *Id.*, Ex. 5, Incident Rep. No. 1951307, dated Dec. 3, 2009. Plaintiff alleges that this incident report was filed in retaliation for having filed the affidavit. *Id.* at p. 16. Disciplinary charges were filed against Plaintiff for making, possessing, or using intoxicants; possession of gambling paraphernalia; possession of anything not authorized; and conducting a gambling pool. *Id.*, Ex. 6, Discipline Hr'g Officer Rep., dated Dec. 15, 2009. At a disciplinary hearing held on December 15, 2009, Plaintiff admitted that the intoxicants, stamps, and gambling slips were his. *Id.* at p. 2. Plaintiff was sanctioned with sixty days of disciplinary segregation, lost thirty-six days of good time credits, and had his visitation, telephone, and commissary privileges restricted. *Id.*

While Plaintiff was in SHU, Helms and Defendant Schult told Plaintiff that he was "going to rot in this SHU for extra punishment for filing a[n] Affidavit on our staff." *Id.* at p. 24. When Plaintiff complained that the correctional officers would not flush his toilet or turn off his lights, they "would state we know what you did, filed a[] Court Affidavit against CO/Matteau." *Id.* at p. 33. In February 2010, Helms and Schult told Plaintiff that he would be placed in BOP's "Diesel Therapy Program" for having filed the affidavit. *Id.* at pp. 13-14. Plaintiff further alleges that Defendants Lucas and Sepanek manipulated Plaintiff's security classification in retaliation for the affidavit, which resulted in Plaintiff being transferred to USP Pollock, LA. *Id.* at pp. 27-28 & 40. Helms, Sepanek, and Lucas also confiscated Plaintiff's legal mail, legal work, and Civil Procedure book, and stated "you like to read books so that you can file [an] Affidavit against [a] BOP employee in Court, kiss that Federal Rules of Civil Procedure book good bye." *Id.* at p. 34.

## II. STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint. *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

### III. DISCUSSION

On September 23, 2015, the Honorable Norman A. Mordue, Senior United States District Judge, issued a Memorandum-Decision and Order, which determined that Plaintiff's Amended

Complaint was subject to dismissal pursuant to 28 U.S.C. § 1915A, with the exception of Plaintiff's

retaliation claims, that were based on the confiscation of his legal materials, transfer to FCI Pollock,

and placement in the Diesel Therapy Program. *See* Mem.-Dec. & Order, dated Sept. 23, 2015.[2]

Plaintiff's retaliation claims survived against Defendants Helms, Schult, Watts, Sepanek, and Lucas.

*Id.* at p. 6.

Defendants now move to dismiss Plaintiff's retaliation claims on the ground that the Court

should not recognize a *Bivens* remedy under the First Amendment. Dkt. No. 69-1, Defs.' Mem. of

Law. In the alternative, Defendants request that Plaintiff's claims against Defendant Watts be

dismissed because there are no allegations that he was personally involved in any retaliatory

conduct. *Id.* at p. 15.

### A. Legal Standard for *Bivens* Claims

The Supreme Court first recognized "an implied private action for damages against federal

officers alleged to have violated a citizen's constitutional rights" in *Bivens v. Six Unknown Named

Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Corr. Servs. Corp. v. Malesko*, 534

U.S. 61, 66 (2001). In *Bivens*, the plaintiff, alleging that federal agents, without a warrant or

probable cause, arrested him and searched his home, brought a damages action under the Fourth

Amendment. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. at 389.

The Supreme Court, while noting that "the Fourth Amendment does not in so many words provide

for its enforcement by an award of money damages," stated that it is "well settled that where legal

rights have been invaded . . . federal courts may use any available remedy to make good the wrong

---

[2] Plaintiff's retaliation claim based upon the filing of false incident reports was dismissed without leave to replead in Judge Mordue's earlier Memorandum-Decision and Order. Mem.-Dec. & Order, dated Sept. 23, 2015, at p. 3 n.2.

done." *Id.* at 396 (citation omitted). The Supreme Court subsequently recognized an implied damages remedy for employment discrimination in violation of the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228 (1979), and a remedy for cruel and unusual punishment in violation of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14 (1980).

"The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 70. Nonetheless, "the Supreme Court has warned that the *Bivens* remedy is an extraordinary thing that should rarely if ever be applied in 'new contexts.'" *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir. 2009) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 70). "[A]ny freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). Since extending *Bivens* to the Eighth Amendment in *Carlson v. Green*, the Supreme Court has consistently declined to extend the doctrine to any new context or category of defendants. *Minneci v. Pollard*, 132 S. Ct. 617, 626 (2012) (Eighth Amendment claim against employees of privately operated federal prison); *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 521-22 (Eighth Amendment claim against private entity that operated federal prison); *Wilkie v. Robbins*, 551 U.S. at 548-62 (claim for harassment against government employees under the Fourth and Fifth Amendments); *FDIC v. Meyer*, 510 U.S. 471, 484 (1994) (Fifth Amendment claim against federal agency); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (Fifth Amendment claim for denial of social security disability benefits); *Chappell v. Wallace*, 462 U.S. 296, 300-04 (1983) (suit by military personnel against superior officers for various constitutional violations); *Bush v. Lucas*, 462 U.S. 367, 388-90 (1983) (First Amendment claim against federal employer).

Thus, under Second Circuit law, before allowing a *Bivens* action to proceed, a court must first determine whether doing so "would extend *Bivens* to a new 'context.'" *Arar v. Ashcroft*, 585 F.3d at 572. A "context" is a "potentially recurring scenario that has similar legal and factual components." *Id.*; *see also Turkmen v. Hasty*, 789 F.3d 218, 234 (2d Cir. 2015) ("We look[] to both the rights injured and the mechanism of the injury to determine the context.")

Having determined that a *Bivens* action arises in a new context, a court must next determine whether it would be appropriate to extend *Bivens* to that context. *Arar v. Ashcroft*, 585 F.3d at 572. The Supreme Court has articulated a two part test for whether to recognize a *Bivens* remedy:

> In the first place, there is a question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a *Bivens* remedy is a subject of judgment: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."

*Wilkie v. Robbins*, 551 U.S. at 550 (citations omitted); *see also Minneci v. Pollard*, 132 S. Ct. at 623 ("Although the Court, in reaching its decisions, has not always similarly emphasized the same aspects of the cases, *Wilkie* fairly summarizes the basic considerations that underlie the decisions."); *Arar v. Ashcroft*, 585 F.3d at 572 (citing *Wilkie v. Robbins*, 551 U.S. at 550).

## B. Whether a *Bivens* Action Should be Implied Under the First Amendment

The Supreme Court has assumed without deciding that *Bivens* extends to First Amendment claims on several occasions. *Wood v. Moss*, 134 S. Ct. 2056, 2066 (2014) ("[W]e have several times assumed without deciding that *Bivens* extends to First Amendment claims."); *Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012) ("We need not (and do not) decide here whether *Bivens* extends to First Amendment retaliatory arrest claims."); *Ashcroft v. Iqbal*, 556 U.S. at 675 ("[W]e assume,

without deciding, that respondent's First Amendment claim is actionable under *Bivens*.").[3]

For that reason, the Second Circuit held in *Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015) that a free exercise claim necessarily raises a new *Bivens* context. In *Turkmen*, the plaintiffs were Muslims and Arab citizens who were arrested and detained in the post-9/11 investigation "even though they were unquestionably never involved in terrorist activities." 789 F.3d at 224. The plaintiffs asserted *Bivens* claims for conditions of confinement, equal protection, unreasonable strip searches, interference with counsel, and free exercise under the Fourth, Fifth, and First Amendments. *Id.* at 225. The plaintiffs' First Amendment free exercise claim specifically alleged that the defendants violated the plaintiffs' free exercise rights by denying them copies of the Koran and Halal food and failing to stop staff from interfering with the plaintiffs' prayers. *Id.* at 236.

The Second Circuit considered whether the plaintiffs' claims extended *Bivens* to a new context, looking to the "rights injured" and the "mechanism of the injury." *Id.* at 234. With respect to the plaintiffs' conditions of confinement claims, the court determined that the context was "federal detainee Plaintiffs, housed in a federal facility, allege that individual federal officers subjected them to punitive conditions." *Id.* at 235. This claim was "firmly within a familiar *Bivens* context," recognized by both the Supreme Court and Second Circuit. *Id.* (citing *Carlson v. Green*, 446 U.S. at 17-20; *Thomas v. Ashcroft*, 470 F.3d 491, 497 (2d Cir. 2006)). The plaintiffs' Fourth Amendment claim for unlawful strip searches similarly stood in a familiar context because

---

[3] In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court suggested that a *Bivens* remedy is available for First Amendment claims. *See* 547 U.S. at 256 ("When the [retaliating] officer is federal, he is subject to an action for damages on the authority of *Bivens*."); *see also M.E.S., Inc. v. Snell*, 712 F.3d 666, 675 (2d Cir. 2013) ("[In *Hartman*], the Supreme Court reiterated the general availability of a *Bivens* action to sue federal officials for First Amendment retaliation."). However, *Hartman* did not hold that a *Bivens* remedy is available for First Amendment retaliation claims; instead, the issue concerned whether there must be a lack of probable cause for a retaliatory prosecution suit under 42 U.S.C. § 1983 or *Bivens*. *Hartman v. Moore*, 547 U.S. at 255-56. The Supreme Court has since re-stated that the availability of a *Bivens* remedy for a First Amendment retaliation claim is an open issue. *Wood v. Moss*, 134 S. Ct. at 2066; *Reichle v. Howards*, 132 S. Ct. at 2093 n.4; *Ashcroft v. Iqbal*, 556 U.S. at 675.

the right injured and the mechanism of the injury (an unreasonable search by prison official) had previously been recognized. *Id.* at 237 (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. at 389-90; *Arar v. Ashcroft*, 585 F.3d at 580).  However, the plaintiffs' free exercise claim stood in a new context because the right injured—the plaintiffs' free exercise rights—had not been recognized by the Supreme Court, which had "declined to extend *Bivens* to a claim sounding in the First Amendment."  *Id.* at 236 (quoting *Ashcroft v. Iqbal*, 556 U.S. at 675). "[A]bsent guidance from the Supreme Court," the panel declined to extend *Bivens* to the plaintiffs' free exercise claims and found them subject to dismissal without considering the availability of alternative remedies or the presence of any special factors that counsel hesitation. *Id.* at 237.

The Second Circuit's decision in *Turkmen* compels the conclusion that Plaintiff's First Amendment retaliation claim presents a new *Bivens* context.  While the plaintiffs' First Amendment claim in *Turkmen* was limited to the free exercise clause, the panel's decision "is unambiguously predicated on the understanding that the Supreme Court has never recognized a *Bivens* claim in the First Amendment context at all." *Tanvir v. Lynch*, 128 F. Supp. 3d 756, 770 (S.D.N.Y. 2015).  Thus, it follows from *Turkmen* that any claim sounding in the First Amendment necessarily raises a new context.  *Id.*

However, it is unclear whether the Second Circuit also intended to foreclose *all* First Amendment claims under *Bivens*.  In *Turkmen*, upon finding that the plaintiffs' free exercise claim raised a new *Bivens* context, the Second Circuit declined to extend *Bivens*, "without undertaking any additional analysis of whether *Bivens* might be appropriate in that context."  *Tanvir v. Lynch*, 128 F. Supp. 3d at 771.  In *Tanvir*, the district court suggests that *Turkmen* might be read as "end[ing] the inquiry" for First Amendment claims under *Bivens*.  *Id.*  This Court is reluctant to read *Turkmen*

as categorically precluding all First Amendment claims. First, *Turkmen* involved the unique circumstance of "out-of-status" aliens held on terrorism charges. 789 F.3d at 224. Notably, in *Arar*, the Second Circuit found that the "special factors" of diplomacy, foreign policy, and national security "counseled hesitation" in the context of extraordinary rendition. 585 F.3d at 574. Second, the Second Circuit has previously noted "the general availability of a *Bivens* action to sue federal officials for First Amendment retaliation." *M.E.S., Inc. v. Snell*, 712 F.3d at 675. Similarly, the 3rd, 6th, 9th, and D.C. Circuits have all allowed First Amendment claims to proceed under *Bivens*. *See, e.g.*, *George v. Rehiel*, 738 F.3d 562, 585 n. 24 (3d Cir. 2013); *Shehee v. Luttrell*, 199 F.3d 295, 298 (6th Cir. 1999); *Gibson v. United States*, 781 F.2d 1334, 1342 (9th Cir. 1986); *Dellums v. Powell*, 566 F.2d 167, 194 (D.C. Cir. 1977). Thus, the Court declines to read *Turkmen* as foreclosing all First Amendment claims.[4] Having found that Plaintiff's claim raises a new *Bivens* context, the Court will proceed to consider (1) whether there is an alternative remedial scheme available to Plaintiff and (2) whether there are any special factors that counsel hesitation before creating a *Bivens* remedy in this context. *Arar v. Ashcroft*, 585 F.3d at 572.

### 1. Alternative Remedies

Defendants first argue that Plaintiff has available alternative remedies that foreclose his First

---

[4] The Court further notes the Second Circuit's recent decision in *McGowan v. United States*, __ F.3d __, 2016 WL 3163061 (2d Cir. June 13, 2016). In their Memorandum of Law, Defendants relied on the district court decision in that case, which was issued before *Turkmen*, and declined to imply a *Bivens* remedy for a prisoner's First Amendment retaliation claim. Defs.' Mem. of Law at pp. 9-10 (citing *McGowan v. United States*, 94 F. Supp. 3d 382 (E.D.N.Y. 2015)). The district court found that (1) federal prisoners have available alterative remedies and (2) the balancing of prisoners' First Amendment rights with prison security was a special factor that counseled hesitation. *McGowan v. United States*, 94 F. Supp. 3d at 386-90. On appeal, the Second Circuit affirmed, but on different grounds. 2016 WL 3163061 at *2-3. The Second Circuit found that the defendant was entitled to qualified immunity and declined to decide the "difficult issue" of whether to recognize a *Bivens* remedy for a federal prisoner's First Amendment retaliation claim. *Id.* The Second Circuit's decision in *McGowan* indicates that *Turkmen* did not "end the inquiry" for First Amendment claims under *Bivens*, and that district courts must continue to determine on a case-by-case basis whether a *Bivens* remedy should be recognized.

Amendment claims. Defs.' Mem. of Law at pp. 11-13. Specifically, Defendants assert that Plaintiff could have vindicated his First Amendment rights through the BOP's Administrative Remedy Program ("ARP"), 28 C.F.R. Pt. 542, Subpt. B, and then by filing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241. *Id.* at p. 11.

The ARP authorizes inmates to seek formal review of complaints related to any aspect of their confinement. *See Johnson v. Testman*, 380 F.3d 691, 693 (2d Cir. 2004). Under the ARP, an inmate must first attempt to informally resolve his claims with BOP staff. 28 C.F.R. § 542.13(a). If the issue cannot be resolved informally, the inmate must submit a written "Administrative Remedy Request" to the Warden within twenty days of the events triggering the complaint. *Id.* § 542.14(a). If the formal request is denied, the inmate must then appeal to the appropriate BOP Regional Director. *Id.* § 542.15(a). Finally, an inmate must appeal a negative decision by the BOP Regional Director to the BOP's Office of General Counsel. *Id*.

Once an inmate has exhausted administrative remedies under the ARP, he may file a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2241. *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). "A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Id.* at 632; *see also Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) ("A challenge to the *execution* of a sentence—in contrast to the *imposition* of a sentence—is properly filed pursuant to § 2241."). Thus, the Second Circuit has "long interpreted" § 2241 to apply to challenges to "such matters as the administration of parole, . . . prison disciplinary actions, prison transfers, type of detention and prison conditions." *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (quoting *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001)).

Defendants argue that Plaintiff could have filed § 2241 petition challenging his transfer to another facility, placement in the "Diesel Therapy Program," and confiscation of legal materials. Defs.' Mem. of Law at p. 12. However, even assuming that Plaintiff's claims were the proper subject of a § 2241 petition, the Court is not persuaded that the ARP and § 2241 are alternative remedies that foreclose Plaintiff's *Bivens* claims.

Supreme Court decisions that have found that an "alternative, existing process . . . amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" fall into two categories. *Wilkie v. Robbins*, 551 U.S. at 550. First, the Court has declined to imply a *Bivens* remedy where Congress has established a "comprehensive" remedial scheme. *Schweiker v. Chilicky*, 487 U.S. at 425; *Bush v. Lucas*, 462 U.S. at 388. Second, the Court has found remedies that provide "roughly similar incentives for potential defendants" and "roughly similar compensation to victims" may be an adequate alternative for protecting constitutional rights. *Minneci v. Pollard*, 132 S. Ct. at 625; *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 72. The alternative remedies available to Plaintiff as identified by Defendants neither constitute a "comprehensive" remedial scheme established by Congress nor do they constitute an adequate alternative that provides "roughly similar" incentives and compensation.

In *Bush v. Lucas*, the Supreme Court found that the "elaborate" and "comprehensive" remedial scheme established by Congress for the civil service counseled against extending *Bivens* to federal employees whose First Amendment rights are violated by their superiors. 462 U.S. at 385 & 388-89. The federal employment relationship "is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Id.* at 368. Due to Congress's activity in the area, it "[wa]s in a far better position than a court to evaluate the impact

of a new species of litigation between federal employees on the efficiency of the civil service."
*Id.* at 389. Thus, where Congress has established a "comprehensive" remedial scheme, the courts
will generally not supplement the relief available thereunder. *Dotson v. Griesa*, 398 F.3d 156, 160
(2d Cir. 2005). Furthermore, courts "generally assume that the omission of particular relief from
a comprehensive congressional scheme 'has not been inadvertent.'" *Atterbury v. U.S. Marshals
Serv.*, 805 F.3d 398, 405 (2d Cir. 2015) (quoting *Schweiker v. Chilicky*, 487 U.S. at 423).

While it is true that Congress "has been active in the area of prisoners' rights," *McGowan
v. United States*, 94 F. Supp. 3d 382, 389 (E.D.N.Y. 2015), the Supreme Court has never found
Congress's activity in this area to be a factor foreclosing *Bivens* actions. Indeed, the Supreme Court
in *Malesko* stated that "[i]f a federal prisoner in a BOP facility alleges a constitutional deprivation,
he may bring a *Bivens* claim against the offending official officer, subject to the defense of qualified
immunity." *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 72; *see also Carlson v. Green*, 446 U.S. at
19-23 (creating Eighth Amendment *Bivens* action for federal prisoner). Because the Supreme Court
has recognized that *Bivens* is available to federal prisoners, the Court declines to find that
Congress's actions in this area constitutes a comprehensive scheme foreclosing the extension of
*Bivens*.[5]

In the absence of a "comprehensive" Congressional scheme, the Supreme Court has also
found that alternative remedies that provide "roughly similar" incentives and compensation may
constitute "a convincing reason . . . to refrain from providing" a *Bivens* remedy. *Minneci v. Pollard*,
132 S. Ct. at 621. In *Minneci*, the Court refused to extend *Bivens* to Eighth Amendment claims
against employees of a privately operated federal prison because of the availability of state tort

---

[5] Defendants have not explicitly argued that there is a "comprehensive" congressional scheme counseling
against the creation of a *Bivens* remedy.

remedies against those employees. *Id.* at 620; *see also Malesko*,534 U.S. at 72-73 (citing to availability of state tort remedies to federal prisoners in private prisons). "State tort law . . . can help to deter constitutional violations as well as to provide compensation to a violation's victims." *Minneci*, 132 S. Ct. at 624. The Court distinguished *Carlson*, which had authorized Eighth Amendment claims against employees of federally operated prisons, because inmates in a federally operated facility are unable to bring a state tort action against the federal employees. *Id.* at 623.[6] The Court stated that a state-law remedy may be "less generous" and "need not be perfectly congruent" with a potential *Bivens* remedy. *Id.* at 625.

An adequate alternative therefore is one that serves *Bivens*' "core purpose of deterring individual officers from engaging in unconstitutional wrongdoing" *Malesko*, 534 U.S. at 74. An adequate alternative must also provide some compensation to the victims of constitutional violations. *See Minneci*, 132 S. Ct. at 625. The availability of a writ of *habeas corpus* under 28 U.S.C. § 2241 is not an adequate alternative because it serves neither of these functions. *Habeas corpus* is a remedy for challenging unlawful incarceration; it does not provide a compensatory function or serve to deter individual officers. *See Engel v. Buchan*, 710 F.3d 698, 706 (7th Cir. 2013) ("Habeas corpus may operate as an indirect incentive to induce constitutional compliance, but it cannot perform a compensatory function."). Nor do the administrative grievance procedures available to federal prisoners serve those functions.

Defendants cite to *McGowan v. United States*, 94 F. Supp. 3d 382 (E.D.N.Y. 2015) in support of their position that the availability of *habeas corpus* and administrative remedies may

---

[6] As stated by the Court: "the potential existence of an adequate 'alternative, existing process' differs dramatically in the two sets of cases. Prisoners ordinarily *cannot* bring state-law tort actions against employees of the Federal Government. . . . But prisoners ordinarily *can* bring state-law tort actions against employees of a private firm." *Minneci v. Pollard*, 132 S. Ct. at 623.

adequately vindicate an inmate's constitutional rights. Defs.' Mem. of Law at p. 12. However, the Court finds the *McGowan* court's analysis inconsistent with Supreme Court precedent. The *McGowan* court states that "monetary recovery has not been a factor at all in the more recent *Bivens* jurisprudence" and "the emphasis . . . is on the existence of an avenue to protect the right, not the method of protection." 94 F. Supp. 3d at 387-88. This over-reads *Minneci* and *Malesko*, which both recognized that in order to be adequate, an alternative remedy must compensate the victims and deter the perpetrators of constitutional violations, although it "need not be perfectly congruent" with a potential *Bivens* remedy. *Minneci v. Pollard*, 132 S. Ct. at 625; *Corr. Servs. Corp. v. Malesko*, 534 U.S. at 72. While the Court in *Malesko* favorably cited to the availability of administrative remedies and injunctive relief, 534 U.S. at 73, its analysis focused on the availability of state law remedies, which served *Bivens*' core purpose of deterring constitutional violations by individuals, *id.* at 72.

Thus, the Court is not persuaded by Defendants' arguments that the availability of *habeas corpus* and administrative remedies counsel against recognizing a *Bivens* action in this context.

### 2. Special Factors that Counsel Hesitation

Defendants next argue that "prison security" is a special factor that counsels hesitation. Defs.' Mem. of Law at pp. 13-14. Again relying on *McGowan*, Defendants argue that courts should hesitate before "intermeddl[ing] in the delicate area of balancing what would be the First Amendment right to expression against the crucial security concerns inherent in the custodial setting." *Id.* at p. 13 (quoting *McGowan v. United States*, 94 F. Supp. 3d at 388). Defendants note that a prisoner only enjoys limited First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Second Circuit has stated that the threshold for whether a factor counsels hesitation is "remarkably low." *Arar v. Ashcroft*, 585 F.3d at 574. "'Hesitation' is 'counseled' whenever thoughtful discretion would pause even to consider." *Id.* The Supreme Court has found "special factors that counsel hesitation" in the following circumstances: claims implicating "the unique disciplinary structure of the military," *Chappell v. Wallace*, 462 U.S. at 304; *United States v. Stanley*, 483 U.S. 669, 705-06 (1987); where Congress has established a "comprehensive" statutory scheme, *Bush v. Lucas*, 462 U.S. at 388; *Schweiker v. Chilicky*, 487 U.S. at 425; and the "serious difficulty of devising a workable cause of action," *Wilkie v. Robbins*, 551 U.S. at 562. In *Arar*, the Second Circuit found that an action's implication of diplomacy, foreign policy, and national security concerns counseled hesitation. 585 F.3d at 574.

Defendants' argument is again contrary to Supreme Court precedent. In *Carlson v. Green*, the Court held that no special factors counseled hesitation in creating a remedy against federal prison officials because they "do not enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." 446 U.S. at 19. Furthermore, the Court noted that qualified immunity provides prison officials with "adequate protection" that would prevent them from being inhibited in performing their official duties. *Id.* The Court reiterated the availability of *Bivens* actions against federal prison officials in *Malesko*. 534 U.S. at 72. The Court is not persuaded that the First Amendment rights at issue raise unique concerns that require courts to hesitate before permitting an action against federal prison officials.

### 3. Summary

While acknowledging that *Bivens* is an "extraordinary remedy," *Arar v. Ashcroft*, 585 F.3d at 571, the Court does not find that either the available alternative remedies or any special factors

weigh against allowing Plaintiff's *Bivens* action to proceed. Accordingly, the Court recommends that Defendants' Motion to Dismiss on the ground that the Court should not recognize a *Bivens* remedy for Plaintiff's First Amendment retaliation claim be **denied**.

### C. Claims Against Defendant Watts

As an alternative argument, Defendants argue that the Court should dismiss all claims against Defendant Watts because there is no allegation that he was personally involved in retaliating against Plaintiff. Defs.' Mem. of Law at pp 15-16.

"Because vicarious liability is inapplicable to *Bivens* . . . a plaintiff must plead that each Government-official defendant, though the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Thomas v. Ashcroft*, 470 F.3d 491, 496 (2d Cir. 2006). Here, Plaintiff's sole allegation against Defendants Watts is that Defendant Schult informed Plaintiff that she and Watts would make sure that Plaintiff would be placed in the Diesel Therapy Program because of the affidavit he filed. Am. Compl. at p. 21. As Defendants argue, the Amended Complaint lacks allegations that Watts was involved in Plaintiff's placement in the Diesel Therapy Program or was even aware that Plaintiff had filed the affidavit. This is insufficient to establish Watts' personal involvement.

Accordingly, the Court recommends that Defendants' Motion to Dismiss all claims against Defendant Watts be **granted**.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion to Dismiss (Dkt. No. 69) be **DENIED** insofar Defendants seek to dismiss Plaintiff's retaliation claims for failure to state a claim and **GRANTED**

as to Defendant Watts. If this recommendation is adopted, Defendant Watts should be **TERMINATED** as a defendant to this action; and it is further

ORDERED, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).


Date:   August 8, 2016
        Albany, New York




Daniel J. Stewart
U.S. Magistrate Judge