UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**VINCENT MICHAEL MARINO,**

**Plaintiff,**

**-v-**                                                    **9:12-CV-801 (NAM/DJS)**

**HARRELL WATTS, General Counsel/BOP/DOJ,
DEBORAH SCHULT, Warden/BOP/DOJ, ROBERT
HELMS, SIS Lieutenant/BOP/DOJ, MS. SEPANEK,
Counselor/BOP/DOJ, MR. LUCAS, Case
Manager/BOP/DOJ,**

**Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Vincent Michael Marino
14431-038
FCI HAZELTON
PO Box 5000
Bruceton Mills, West Virginia 26525
Plaintiff, *pro se*

Hon. Eric T. Schneiderman, Attorney General of the State of New York
Karen Folster Lesperance, Esq., Assistant New York State Attorney
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207
Attorney for Defendants

**Hon. Norman A. Mordue, Senior U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

Plaintiff, an inmate in the federal correctional system, brought this civil rights action

pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S.

388 (1971). Defendants moved (Dkt. No. 69) to dismiss the action, arguing that the Court should

decline to recognize a *Bivens* remedy for a First Amendment retaliation claim, the only claim that

survived initial review. Defendants also argued that all claims against defendant Watts should be

dismissed as he was not personally involved in the alleged retaliation.  Upon referral pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.3(c), United States Magistrate Judge Daniel J.

Stewart issued a Report-Recommendation and Order (Dkt. No. 79) recommending that the motion

be granted as to defendant Watts, but otherwise denied.  Plaintiff filed a letter agreeing with the

Report-Recommendation.  (Dkt. No. 82).  Defendants have filed an objection to this Report-

Recommendation.  (Dkt. No. 83).  Plaintiff has filed an opposition to defendants' objections.

(Dkt. No. 85).  Given the extensive nature of defendants' objections, the Court conducts a *de novo*

review.  *See* 28 U.S.C. § 636(b)(1)(C).  As set forth below, the Report-Recommendation and

Order is adopted in its entirety.

## BACKGROUND

The factual background has been set forth in detail in both Judge Stewart's Report-

Recommendation (Dkt. No. 79) and in the previous Report-Recommendations and Memorandum-

Decision and Orders.  (*See* Dkt. Nos. 47, 49, 56, 62).  Therefore, the Court assumes familiarity

with the factual background and only briefly summarizes it here as necessary to its decision.

Plaintiff alleges that on April 8, 2008, while incarcerated at Ray Brook Federal

Correctional Institute ("Ray Brook"), he provided a sworn affidavit in support of a fellow

inmate's anticipated litigation.  Plaintiff's affidavit was filed as part of the inmate's federal

pleading.  According to plaintiff, defendants Helms and Poirier found a copy of this affidavit in

plaintiff's cell on December 2, 2009.  The next day, December 3, 2009, defendants Helms and

Poirier planted betting slips in his cell and confiscated unused stamps, and also found ten gallons

of homemade intoxicants.  Plaintiff was subsequently charged with making, possessing, or using

intoxicants, possessing gambling paraphernalia, conducting a gambling pool, and possessing

unauthorized items.  On December 15, 2009, after a disciplinary hearing, plaintiff was found

guilty. Plaintiff was sanctioned with sixty days in disciplinary segregation, lost thirty-six days of good time jail credit, and was restricted from using the telephone, visitation, and commissary.

While plaintiff was in SHU, defendants Helms and Schult told him that he was "going to rot in this SHU for extra punishment for filing a[n] Affidavit on our staff." Plaintiff further claims that his security classification was changed from eleven to twenty-four points, that he was transferred to a facility with a "history of over 15 murders, over 300 stabbings & over 300 knife shots[,]" placed in a Diesel Therapy Program, and that his legal mail, legal work, and Civil Procedure Book were confiscated all following the discovery of his affidavit.

As noted above, defendants moved to dismiss on the ground that the Court should not recognize a *Bivens* remedy under the First Amendment, and, alternatively, that the claims against defendant Watts be dismissed for a lack of personal involvement, and Judge Stewart has recommended denying the motion to dismiss as to the *Bivens* argument, and granting as to defendant Watts. Neither plaintiff nor defendants object to the portion of the Report-Recommendation and Order dismissing defendant Watts. The Court further agrees with Judge Stewart's thorough analysis on the *Bivens* argument.

### DISCUSSION

As Judge Stewart explained in detail, in *Bivens*, the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights," and has since been very reluctant to extend *Bivens* to new contexts. (Dkt. No. 79 at 6-7); *see also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 70 (2001) ("In 30 years of *Bivens* jurisprudence we have extended its holding only twice, to provide an otherwise nonexistent cause of action against *individual officers* alleged to have acted unconstitutionally, or to provide a cause of action for a plaintiff who lacked *any alternative remedy* for harms caused by

an individual officer's unconstitutional conduct.") (emphasis in original).

Under Second Circuit law, the first step in the analysis, is to determine whether allowing the action to proceed would extend *Bivens* to a new context. *Arar v. Ashcroft*, 585 F.3d at 572. Judge Stewart concluded that plaintiff's First Amendment retaliation claim does, indeed, present a new *Bivens* context.[1] (Dkt. No. 79 at 9-10) (citing *Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015) (declining to extend *Bivens* to the free exercise claims that plaintiffs were denied copies of the Koran and Halal food and that their prayers were interfered with, brought by Muslim and Arab citizens arrested and detained in the post-9/11 investigation)).

After concluding that the claim raises a new *Bivens* context, Judge Stewart then proceeded to consider: 1) whether there is an alternative remedial scheme available to plaintiff; and 2) whether there are any special factors that counsel hesitation before creating a *Bivens* remedy in this context. *Arar v. Ashcroft*, 585 F.3d at 572. Judge Stewart concluded that neither the alternative remedies nor any special factors weighed against allowing plaintiff's action to proceed, and recommended denying plaintiff's motion to dismiss on this ground. (Dkt. No. 79 at 17-18). The Court adopts with Judge Stewart's well-reasoned analysis.

The Court agrees with Judge Stewart's discussion regarding the lack of an alternative comprehensive remedial scheme established by Congress that would provide "roughly similar" incentives and compensation. (Dkt. No. 79 at 11-16). The Court adds that although defendants argue that the Supreme Court's decision in *Malesko* held that the Bureau of Prison's Administrative Remedy Program ("ARP") "constituted a sufficient alternative remedy precluding the need to extend *Bivens*," (Dkt. No. 83 at 7), this Court does not read the *Malesko* decision so broadly. The plaintiff in *Malesko* sought recovery against a private corporation operating a

---

[1] Defendants agree with this portion of the Report-Recommendation. (Dkt. No. 83 at 3).

halfway house under contract with the Bureau of Prisons, *not* against individual officers. *See generally Malesko*, 534 U.S. 61. In concluding that *Malesko* did not present a situation warranting extension of *Bivens* to a new context, the Supreme Court noted that inmates in plaintiff's position had access to the ARP, and went on to explain that "unlike the *Bivens* remedy, which we have never considered a proper vehicle for altering an entity's policy, injunctive relief has long been recognized as the proper means for preventing *entities* from acting unconstitutionally." *Id.* at 74 (emphasis added). The Supreme Court, therefore, did not discuss, in *Malesko*, a situation such as the plaintiff's where he is seeking a cause of action against the individual officers. Similarly, the Court rejects defendants' argument that the Supreme Court's decision in *Minneci v. Pollard*, 132 S. Ct. 617 (2012) compels the conclusion here that plaintiff's available remedies are sufficient to conclude that *Bivens* should not be extended to this context. While it is true that the *Minneci* court noted that state-law remedies and a potential *Bivens* remedy "need not be perfectly congruent," in *Minneci*, the Court addressed a claim against employees of a privately operated federal prison who had state-tort law remedies available against a private firm, unlike prisoners who "ordinarily *cannot* bring state-law tort actions against employees of the Federal Government." *Minneci v. Pollard*, 132 S. Ct. at 623 (emphasis in original). Here, plaintiff's retaliation claims lie against government employees, not employees of a private firm. The Court likewise agrees with Judge Stewart's discussion regarding whether special factors counsel hesitation.

## CONCLUSION

Therefore, the Report-Recommendation and Order is adopted in its entirety.

It is therefore

ORDERED that the Order and Report-Recommendation (Dkt. No. 79) is accepted; and it

is further

ORDERED that defendants' motion to dismiss (Dkt. No. 69) be DENIED to the extent it seeks to dismiss plaintiff's retaliation claims for failure to state a claim and GRANTED as to defendant Watts; and it is further

ORDERED that defendant Watts be terminated as a defendant to this action; and it is further

ORDERED that the Clerk of the Court is directed to serve copies of this Memorandum-Decision and Order in accordance with the Local Rules of the Northern District of New York.

IT IS SO ORDERED.

Date:    September 29, 2016

Norman A. Mordue
Senior U.S. District Judge